The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: March 12 2012

_____
Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-33360 |
| | ) | |
| Bobbie Jo LeMatre-Karbler, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING
### MOTION TO DISGORGE ATTORNEY FEES

This matter is before the court on Debtor's motion to disgorge attorney fees paid to attorney Donald Harris ("Motion") [Doc. # 19]. The court held an evidentiary hearing on the Motion at which Debtor, her current attorney, Rebecca Robinson, and attorney Donald Harris attended in person. For the reasons that follow, attorney Harris will be ordered to refund $564.00 to Debtor by April 16, 2012.

### FACTUAL BACKGROUND

At the hearing on the Motion, Debtor testified to the following, which testimony the court finds credible. Debtor had an appointment at the law office of attorney Donald Harris on March 16, 2011. Her purpose in making the appointment was to seek relief under Chapter 7 of the Bankruptcy Code. However, at her appointment on that date, she did not meet with Harris. She met with Harris's secretary, Marian Mills. Mills informed Debtor that she was not eligible to file a Chapter 7 petition until July 2011 but that she could file a "Chapter 20" petition, which Mills explained would entail filing a Chapter 13 petition and converting to a Chapter 7 case in July. Debtor signed a "Chapter 7 Retainer Agreement" on March 16, agreeing to pay Harris $850.00 to do the work necessary to complete a Chapter 7 case and to represent her

at the § 341 meeting of creditors. [Atty Ex. A]. On that date, Debtor testified that she was told her "total bill" would be $1,250 and she paid that amount in cash. She received a statement itemizing the amount paid as follows:

| | |
|---|---|
| Chapter 7 Bankruptcy | $850.00 |
| Court Filing Fee | $299.00 |
| Total Due | $1149.00 |
| Credit Counseling | $50.00 |
| Debt Counseling | $50.00 |
| Total | $1250.00 |

[Debtor Ex. A]. The statement included a handwritten notation, "Converting to 7 in July $299 fee will be due then." Also on March 16, 2011, Debtor completed the credit counseling required by 11 U.S.C. § 109(h).

Several days later, Debtor called Harris's office and again spoke with Mills. She told Mills that she decided to wait until July in order to file a Chapter 7 petition. However, in April, Debtor received a utility bill that was nearly $300. She took the bill to Harris's office and spoke with Mills. Debtor testified that she told Mills that there would be no difference between filing a Chapter 13 at that time then paying another filing fee in July and paying the utility bill then and waiting until July to file a Chapter 7 petition. Mills agreed and, although Debtor had not signed a bankruptcy petition, told her that a Chapter 13 petition would be filed the following week. At that time, she had not yet met Harris.

Debtor testified that previously having filed bankruptcy, she knew that creditors stop sending bills once a petition was filed. Some time in May, after finding her mailbox full of bills and worried that her utilities would be shut off, Debtor called Harris's office and spoke with Mills. Debtor asked why her bankruptcy petition had not yet been filed. According to Debtor, Mills responded that it was Mills's mistake that her petition had not been filed. Debtor informed Mills that she had legally changed her last name the week before. Mills then scheduled an appointment for Debtor, which occurred in May and at which she met with Harris for the first time. At that meeting, Harris discussed with Debtor options under Chapter 13 regarding two vehicles that she owned. During that discussion and without any explanation of the documents, Mills was giving Debtor papers to sign. When she left Harris's office after the May appointment, Debtor understood that her Chapter 13 petition would be filed.

However, in mid-June, she was still receiving bills from creditors. On June 16, 2011, she called Harris's office around 4:30 p.m. and spoke with Harris. Debtor asked why her bankruptcy petition was not filed. Harris told her that because it was so close to July, she should wait and file a Chapter 7. Debtor stated that she had been to his office three times and had expected her bankruptcy petition to have been filed. She asked him, "Are you going to give me the number of the bar association or do I have to find it myself?"

2

Harris responded that he would call her back with her case number. Harris then commenced this Chapter 13 case by electronically filing a petition and Chapter 13 plan at 4:38 p.m. When Debtor called Harris back on June 16, 2011, Harris told her that he was withdrawing as her attorney and would refund her money. Debtor agreed that would be best so that she could engage other counsel. Debtor then filed a grievance with the Ohio Supreme Court Office of Disciplinary Counsel.

> Debtor later received a letter from Harris dated June 16, 2011, stating as follows:
>
> This letter is to serve as formal notice of our termination of representation. Effective immediately we have closed your file. Friday, June 24, 2011, we will be mailing copies of any documentation that you provided to the firm along with a $486 refund check.
>
> Further, as per your request to terminate representation, we are filing a motion to withdraw as your counsel. If our motion is granted, we will not be attending your 341 hearing.

[Debtor Ex. B]. Attached to the letter was a "Credit Memo" explaining the $486 refund as $200 for the § 341 hearing Harris would not be attending, $200 for the confirmation hearing he would not be attending, and $86 for a Chapter 13 payment plan that he had not prepared. [Debtor Ex. D]. On June 20, 2011, Debtor sent Harris a letter demanding a full refund of the $1,250 paid to him. [Debtor Ex. C].

Notwithstanding his June 16 letter, Harris did not file a motion to withdraw as counsel until July 27, 2011, the day after Debtor's § 341 meeting was scheduled. Harris was present at the § 341 meeting, which was very brief as Debtor did not attend. At that time, Harris had not refunded any money to Debtor. Thus, on July 27, 2011, after the motion to withdraw was filed, the instant motion to disgorge attorney fees was filed by Debtor's new attorney.

Attached to a letter dated August 2, 2011, which was Harris's first communication with Debtor since his June 16 letter, Harris sent Debtor a refund check in the amount of $286. The letter states that a copy of Debtor's paid invoice was enclosed. [Debtor Ex. 1]. The attached paid invoice, which was entirely different than the statement Debtor received when she paid the $1,250 on March 16, 2011, states as follows:

| | |
|---|---|
| Chapter 13 document preparation | $1,600.00 |
| Chapter 13 Filing Fee | 274.00 |
| Credit Counseling Services | 50.00 |
| Debtor Education | 50.00 |
| Conversion from Chapter 13 to Chapter 7 in July 2011 | |
| Chapter 13 document preparation (this amount will be put in your Ch 13 payment plan) | -714.00 |
| Total | $1,260.00 |

[Debtor Ex. 3]. Also attached to the letter was a "Client Statement," which reflected a cash payment of

3

$1,260.00 on March 16, 2011, and application of that payment as follows:

|  |  |  |
|---|---|---|
| Court fee: | $274.00 | |
| Attorney Time: | $886.00 | |
| Credit Counseling: | $ 50.00 | |
| Debtor Education: | $ 50.00 | |
| Total | $1260.00 | |
| Attorney Time: | -$200.00 | (Attorney attended 341 hearing- no confirmation hearing attendance) |
| Ch 13 Plan Prep | -$ 86.00 | |
| **Total Refunded to Client:** | **$286.00** | |

[Debtor Ex. 2].

Bankruptcy Schedules I and J filed by Harris on June 16 show Debtor's monthly income after expenses is $161.97, [Doc. #1, pp. 34-35], and Debtor's means test shows that she is a below median income debtor, [*id*. at 7-8]. Nevertheless, the Chapter 13 plan proposes that Debtor pay $561.30 per month for sixty months, an amount that Debtor testified she could never have paid. [*See* Doc. # 2]. The Disclosure of Compensation of Attorney for Debtor filed by Harris at the commencement of the case states that he received $850.00 prior to filing the statement and that there is a balance due of $750.00. [Doc. # 1, p. 41]. However, the court credits Debtor's testimony that she never agreed to pay an additional $750.00 and that she was told her cost for filing bankruptcy would be $1,250.00 plus an additional $299 filing fee when her case was converted to Chapter 7.

On September 9, 2011, after hearing on the motions, the court granted the Chapter 13 Trustee's motion to dismiss this case for failure to make plan payments and granted Harris's motion to withdraw as attorney of record. [*See* Doc. ## 34 & 35]. On December 2, 2011, Debtor filed a Chapter 7 bankruptcy petition. [*See* Case No. 11-36457, Doc. # 1].[1] Debtor received additional credit counseling on December 1, 2011, [*see id.*, Doc. # 2], as more than 180 days had elapsed since the March 16, 2011, credit counseling she had previously received, *see* 11 U.S.C. § 109(h)(1).

## LAW AND ANALYSIS

In her Motion, Debtor seeks an order requiring Attorney Harris to disgorge the $850.00 attorney fee paid to him. Under 11 U.S.C. § 329(b), the court is authorized to review fees received by a debtor's attorney

---

[1] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

and to assess the reasonable value of services provided by the attorney. If the court determines the compensation received exceeds the reasonable value of services rendered, it may cancel the fee agreement or order a return of the amount that is excessive. 11 U.S.C. § 329(b). "The burden of proof on all issues under 11 U.S.C. § 329 is on the attorney and it is the attorney's burden to come forward with the appropriate proof . . . to establish that the fee is reasonable." *In re Robinson*, 189 Fed. Appx. 371, 374 (6th Cir. 2006) (citing *In re Geraci*, 138 F.3d 314, 318 (7th Cir.1998)).

In this case, Debtor received little or no value from the services rendered by Harris and his staff. First, she was given erroneous legal advice by Mills, Harris's secretary. At her initial appointment at Harris's office in March, Debtor met only with Mills who advised Debtor that she was not eligible to file a Chapter 7 petition until July 2011 but that she could file a Chapter 13 case and convert it to a Chapter 7 in July. However, due to receiving a discharge in a prior Chapter 7 case filed by her in July 2003, Debtor was not eligible to obtain a Chapter 7 discharge in any case filed within eight years of the commencement of the earlier case, including a case filed within the eight-year window as a case under Chapter 13 and converted to Chapter 7 after the eight-year period expires. *See* 11 U.S.C. § 727(a)(8); *In re Hiatt*, 312 B.R. 150, 152 (Bankr. S.D. Ohio 2004).

Second, the erroneous legal advice given by Mills was never corrected by Harris. While perhaps initially that was not an issue since Debtor had decided a few days after her March appointment to simply wait and file a Chapter 7 petition in July, it became an issue after Debtor returned to Harris's office in April with her utility bill. At that time, Debtor agreed to commencing a Chapter 13 case, and Mills told her the petition would be filed. Of course, it could not be filed then as Debtor had not even signed a petition. When she returned to Harris's office in May after inquiring as to why the petition had not been filed, she met with Harris for the first time. It is clear that Debtor's ultimate goal in filing bankruptcy was to obtain a Chapter 7 discharge and that Harris was, or should have been, aware of that fact. Both the fee statement initially received by Debtor on March 16 and the invoice sent by Harris with his August 2 letter refer to converting her case to a Chapter 7 case in July 2011. Yet Harris did not inform Debtor that converting her case in July would not entitle her to receive a Chapter 7 discharge.

Third, the Chapter 13 case was not filed until June 16, 2011, and only after Debtor again called asking why her bankruptcy petition had not been filed. Although Harris argues that the delay was due to Debtor constantly changing her mind as to whether a Chapter 13 petition should be filed, it is clear that as of Debtor's April meeting with Mills and certainly in May when she finally met with Harris and signed the petition, she had agreed that it should be filed and believed it would be filed. To the extent that Debtor could have benefitted from the automatic stay in place on the filing of a Chapter 13 case at an earlier date,

5

such a benefit was largely diminished by the delay in filing.

Fourth, the Chapter 13 plan prepared and filed by Harris or his staff was never feasible. Debtor is a below median income debtor. However, the proposed payments under the plan bore no relationship to Debtor's disposable income as calculated on her Schedules I and J, perhaps because Harris never anticipated any payments being made given the intent to convert the case to a Chapter 7 in July. In fact, the case was dismissed for failure to make any plan payments.

Fifth, although Harris attended the § 341 meeting on July 26, 2011, he had led Debtor to believe that he would not be attending. In any event, his attendance did nothing to bring value to Debtor or the bankruptcy estate.

Finally, the court not only finds that Harris's services in filing this Chapter 13 case were of little or no benefit to Debtor, it also notes that filing this case may actually adversely affect Debtor in her recently filed Chapter 7 case. *See* 11 U.S.C. § 362(c)(3)(A).

For all of the foregoing reasons, the court concludes that the $850.00 attorney fee received by Harris exceeds the reasonable value of services rendered by him and that the entire $850.00 should be disgorged. As he has already refunded $286.00 to Debtor, the court will order Harris to refund the balance of $564.00.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor's Motion to Disgorge Attorney Fees [Doc. # 19] be, and hereby is, **GRANTED**; and

**IT IS FURTHER ORDERED** that Attorney Donald Harris refund $564.00 to Debtor and file with the court a certification that the refund has been made on or before April 16, 2012.